NEEDHAM MIMS, and another, plaintiffs in error, *vs.* ABNER M. LOCKETT, defendant in error.

[1.] A renewal of a note given for land, including other considerations, is no waiver of the vendor's lien.

[2.] The vendor's lien may be waived, expressly, or by implication ; whether the renewal of the note for the purchase money, including other considerations, is an implied waiver, is a question of law for the Court, and not of fact for the jury.

[3.] The vendor's lien extends to the whole and every part of the land. If a part be lost by paramount title, so as to entitle the vendee to an abatement, the residue of the land is bound for the balance of the debt.

[4.] The vendor's lien is upon the land, not upon the proceeds; especially, when sold with notice.

In Equity, in Bibb. Tried before Judge POWERS. May, 1857.

This was a bill in Equity, filed by Abner Lockett against Needham Mims and William D. Mims, for the purpose of asserting and enforcing a vendor's lien upon land.

The bill alleges that Needham Mims conveyed to Lockett, the complainant, and Charles W. Mims, a tract of land in Washington county, containing seven hundred acres, more or less. That after being in possession of said premises more than a year, complainant sold and conveyed to William D. Mims, then of Bibb county, Georgia, but now of Texas, his undivided moiety of said land, for the sum of one thousand dollars, and received his promissory note, without surety, for the purchase money. The same was renewed after it became due, and on the 1st day of January, 1854, he again made and delivered to complainant his note payable one day after date, for $1131.00, and that said amount was the principal and interest then due for the purchase money aforesaid. That afterwards, sundry judgments were obtained against William D., and the executions issuing thereon, were levied upon said land, and the same was sold by the Sheriff of Washington county, under and by virtue of said *fi. fas.* That complainant was present at said sale, and gave notice of his lien as vendor, and that he would enforce it upon and against said land, into whosesoever hands it might go. Needham Mims was present at said sale, and heard the notice given by complainant, and became the purchaser of said land, and promised to pay said note, and to relieve the premises from complainant's lien. But this he now refuses to do. The bill prays that the amount of said purchase money, with interest, be decreed to be a lien on the land, and that the same be sold under the order of Court, and the proceeds applied in satisfaction of said lien, and the balance, if any, be paid over to said Needham.

The answer of Needham Mims admits, that he made a

deed of gift to Lockett and Charles W. Mims, of four hundred and eighty-nine (489) acres, more or less. Admits that William D. Mims purchased said land from Lockett and Charles W. Mims, and went into possession of the same about 1853. Knows nothing in relation to the giving and renewal of the note by William D. to Lockett, except that he heard William D. say, that he bought the land, and gave Lockett for his half, his note therefor, but for what amount does not remember, but he thinks one thousand dollars. Admits the sale by the Sheriff, and that he purchased, at said sale, six hundred and eighty-one acres, but only five hundred and eighty-five acres of which were bought by William D. from Lockett and Charles W. Mims. That two hundred and fifty acres of this five hundred and eighty-five acres were then in litigation, which were afterwards recovered from defendant, leaving him, of the purchase from Lockett and Charles W. Mims, only 335 acres. Defendant admits that he had notice of complainant's lien, but denies that he ever promised to pay and satisfy it; and he submits that if complainant is entitled to his lien, the amount thereof should be abated in the proportion of 585 to 335; denies confederation, and prays to be dismissed, &c.

William D. Mims filed his answer, and admits that he purchased from Lockett his undivided half in five hundred and eighty-eight (588) acres, more or less, of land, in Washington county; that he received only a quit claim deed from Charles W. Mims and Lockett, for two hundred and fifty (250) acres, a pine lot, the title of which proved worthless, and the land lost. That he agreed to pay Lockett for his half, one thousand dollars, for which he gave him his promissory note. After the note became due, being indebted to Lockett for some wheat, he made a new note, 1st January, 1854. for $1131.00, which amount included the price agreed to be paid for the land, with 10 per cent. usurious interest on said sum, and the amount due for the wheat; this last amount he can't recollect. Admits the issuing of the executions against him,

the sale of the land under them, and the purchase by Needham Mims. Admits that complainant has applied to him for payment of the note, which he is unable to pay, he being insolvent.

The case was heard upon bill and answer.

Counsel for defendant asked the Court to instruct the jury that the question of vendor's lien was dependent on the intention of the parties, that it was competent for the vendor to waive his lien, which might be inferred from circumstances, and that the renewal of a note, and giving a new one, into which a new and different matter was incorporated, was a circumstance which they were authorized to take into consideration in determining the question as to whether the lien was waived.

Further, that if any portion of the land sold was lost, by reason of complainant's title proving worthless, that as all the land, or the moiety of the undivided whole, was the consideration of the original note, that the purchaser was entitled to such abatement of the vendor's claim, as the value of the lost part was to the value of the whole.

And that the vendor's lien was subject to be divested by the superior lien of common law judgments, and that a purchase at Sheriff's sale, of land sold as the property of the vendee, though having notice of the lien, took the fee in the land unencumbered with the vendor's claim.

All of which requests the Court refused. But charged the jury that the circumstance of making a new note, into which new matter of consideration was incorporated, was no evidence at all of a waiver of the lien.

That the vendor was entitled to have the undivided half of whatever remained of the land conveyed by him to Wm. D. Mims, sold for the payment of the purchase money, not subject to abatement by reason of a loss of any part of it.

To which charges, and refusal to charge, defendant's counsel excepted.

The jury found for complainant one thousand dollars, the

same being the price of the land, without interest, on account of the usury, and that said amount and the cost be raised' from the sale of one undivided half of the premises sold to Wm. D. Mims, excepting the pine lot, since recovered by paramount title.

Whereupon, defendants, by their counsel, tender their bill of exceptions, assigning as error the charges, and refusals to charge, above excepted to.

STUBBS, HILL & TRACY, for plaintiffs in error.

POE & GRIER, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] It is insisted, in the first place, that the taking of a new note in this case, in which other things were included, amounts to a waiver of the vendor's lien. We know of no such doctrine. If the price of the land be $1,000, and other thing be included in the new note, of the value of $500, and one note taken for both, upon what principle is the lien for $1,000 discharged? Upon the idea of a confusion of goods? That don't apply; for here you can distinguish with perfect accuracy, which is for the land, and what portion for wheat or other articles, with as much certainty as if separate notes had been taken.

[2.] In the second place, it is argued, that the abandonment of the vendor's lien is a question of intention, which should be left to the jury. Admit it. The law is, that the waiver may be actual or implied. But whether the uniting of other considerations in the same note is an implied waiver, is a question of law, just as much as whether taking other and additional security amounts to a waiver. The facts being admitted, the law arising out of any given state of facts, is to be decided by the Courts.

[3.] Again, it is argued, that the amount of the lien in this

17

case, is diminished by a loss of a portion of the land, under paramount title. The lien is upon the whole and every part of the land. If the vendee be entitled to an abatement of his note, on account of the partial failure of the consideration for which it was given, that is another thing—a question not presented by the record. Of course, the land is only bound for the balance of the debt actually due. But the residue o f the land left to the purchaser, is liable for the whole of tha t balance, whatever it may be.

[4.] Lastly, it is contended, that the vendor must look to the proceeds of the sale of the land, and not to the land itsel f. We know of no such law, especially, if he gave notice of his lien on the day of sale.

Judgment affirmed.